Case 2:23-cv-00117   Document 28   Filed 03/11/25 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 11, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BOAZ ALLYN-FEUER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 2:23-CV-00117 |
| | § | |
| JOHN DOE U.S. BORDER PATROL | § | |
| AGENTS 1-20, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING MOTION TO DISMISS

Before the Court is Defendant[1] United States of America's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[2] (D.E. 14, p. 2). Plaintiff sued Defendant under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), alleging Border Patrol agents committed intentional torts while Plaintiff was detained at a border checkpoint. (D.E. 10, p. 8). Defendant argues that the Court lacks personal jurisdiction due to Plaintiff's failure to perfect service, (D.E. 14, p. 3–4), and alternatively that the Court lacks subject matter jurisdiction because Plaintiff's claims are precluded by the FTCA's customs-duty exception found in 28 U.S.C. § 2680(c), *id* at 4–9. Plaintiff is opposed and argues the law enforcement proviso in 28 U.S.C. § 2680(h) governs and waives Defendant's sovereign immunity. *See* (D.E. 19, p. 3–5).

Plaintiff also sued unnamed John Doe U.S. Border Patrol Agents 1–20 under the Fourth Amendment for illegal search and seizure, invoking *Bivens v. Six Unknown Named Agents of Fed.*

---

[1] While Plaintiff names multiple defendants in his first amended complaint, (D.E. 10, p. 1), the United States is the only identified defendant in this matter. Accordingly, the Court uses "Defendant" to refer to the United States in this Order.

[2] Defendant's initial motion to dismiss stated the motion was for "failure to exhaust administrative remedies." (D.E. 14, p. 1). Defendant's reply to Plaintiff's response corrected this error. (D.E. 21, p. 1).

*Bureau of Narcotics*, 403 U.S. 388 (1971). (D.E. 10, p. 7). However, "Congress is better positioned to create remedies in the border-security context[.]" *Egbert v. Boule*, 596 U.S. 482, 494 (2022). Indeed, when deciding whether to allow a *Bivens* action, the "court faces only one question: whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 496 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017)). In *Egbert*, the Supreme Court explained that it was not "competent to authorize a damages action . . . against Border Patrol agents generally." *Id.* And Plaintiff gives no reason as to why that answer has changed in the three years since *Egbert* was decided.

Thus, Plaintiff's *Bivens* claim fails as a matter of law, as this Court is not "competent to authorize a damages action" under *Bivens* "against Border Patrol agents generally." *Id.* Plaintiff also fails to identify any relevant *Bivens* defendants, thus effectively conceding that he has no colorable *Bivens* claim. *See* (D.E. 19, p. 1–2) (explaining failure to identify defendants).

Turning to the FTCA claim, the Court finds that while Defendant's failure to perfect service argument is moot, the customs-duty exception bars Plaintiff's FTCA claim as a matter of law. As such, the Court **GRANTS** the United States' motion to dismiss. (D.E. 14).

## I. Background

The Court takes the below factual summary from Plaintiff's first amended complaint, (D.E. 10), as is appropriate when considering a motion to dismiss. *See Armadillo Hotel Grp., LLC v. Harris*, 84 F.4th 623, 626 (5th Cir. 2023). This action arises from a search on May 1, 2021, at a U.S. Border Patrol checkpoint on "HWY 281 about 48 miles north of McAllen, Texas." (D.E. 10, p. 1, 3). While driving alone in his 1995 Subaru Outback, Plaintiff saw a sign indicating a mandatory U.S. Border Patrol checkpoint. *Id.* Plaintiff stopped his car at the designated location and repeatedly questioned a nearby agent as to why he was being stopped. *Id.* at 3–4. During this questioning, the agent requested a canine unit and told Plaintiff that the canine was called "to run

the vehicle." *Id.* at 4. The agent advised Plaintiff that he was being detained while another agent walked the canine around Plaintiff's car. *Id.* After the canine search, Plaintiff was instructed to drive to a secondary location and then ordered by agents to get out of his car. *Id.*

As Plaintiff got out of his car, he asked why he was being detained. *Id.* He was told that his detention was due to an alert by the canine smelling his car. *Id.* at 5. When an agent requested Plaintiff's identification, Plaintiff refused but was told such was a "legal requirement." *Id.* Feeling "forced" by the agent, Plaintiff directed the agent to his car after indicating that his identification was located therein. *Id.* Before the search, Plaintiff told the agents that he did not consent to a search of his car. *Id.* However, an agent replied that no consent was required. *Id.* While the search was ongoing, another agent pushed Plaintiff, who was not resisting, "20 or 30 feet" toward and "onto" a bench. *Id.* More than ten agents conducted a detailed and comprehensive search of the car. *Id.* During the search, a first-aid kit valued at approximately ten dollars was ruined when it was stained "with an orange cleaning solution." *Id.* at 6. The search resulted in Plaintiff's "containers" being opened and his belongings left "in disarray." *Id.* The agents then drove the car to a large x-ray machine, and informed Plaintiff that his car was being x-rayed due to the canine alert. *Id.* Plaintiff requested documentation of the search but was told by both the agents who conducted the search, and a supervisor contacted after the incident, that no record was available. *Id.* at 6–7. Twenty-five minutes after he was first detained, Plaintiff was allowed to leave in his car. *Id.* at 7. Because his car was in "disarray" due to the search, Plaintiff could not sleep in his car as normal and had to stay in a hotel for approximately sixty dollars. *Id.* Plaintiff asserts that during and after the incident, he experienced "embarrassment, anxiety, fear, nightmares" and "other mental anguish," which he believes will persist in the future. *Id.*

As a result, Plaintiff sued twenty unnamed U.S. Border Patrol Agents under the Fourth Amendment and *Bivens*. *Id.* at 7.[3] Plaintiff also filed suit against the United States under the FTCA, 28 U.S.C. § 1346(b), alleging the "torts of false imprisonment, assault and battery, negligence, gross negligence, conversion, and property loss." (D.E. 10, p. 8). Because the Court has already determined that Plaintiff has no *Bivens* claim, the Court only addresses the FTCA claim.

## II. Legal Standard

### A. Lack of Subject Matter Jurisdiction

Defendant's motion to dismiss challenges the Court's subject matter jurisdiction over Plaintiff's FTCA claim. (D.E. 14, p. 2). A federal court lacks subject matter jurisdiction when the court does not have "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks omitted) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). An objection to subject matter jurisdiction may be raised via a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). FED R. CIV. P. 12(b)(1). When raised, the burden of proof is with the party asserting subject matter jurisdiction. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). To determine whether jurisdiction exists, this Court considers the proffered evidence, *see Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)), which may include the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint and undisputed facts in the record combined with the Court's resolution of disputed facts, *Spotts v. United States*, 613 F.3d 559, 565–

---

[3] However, explained above, Plaintiff's response to the instant motion to dismiss does not help Plaintiff, as it contravenes Supreme Court precedent and points to no colorable *Bivens* defendants. *See* (D.E. 19).

66 (5th Cir. 2010) (citing *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)).

Generally, the United States has sovereign immunity and may only be sued if a "federal statute explicitly provides for a waiver of sovereign immunity." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012). Absent such a waiver, a federal court lacks subject matter jurisdiction. *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 488 (5th Cir. 2014). All waivers of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

### III. Analysis

#### A. Failure to Perfect Service

Defendant argues the Court lacks personal jurisdiction over Defendant due to Plaintiff's failure to perfect service and moves to dismiss this suit under Federal Rule of Civil Procedure 12(b)(5). (D.E. 14, p. 3–4). Defendant argues that while Plaintiff served the United States District Attorney for the Southern District of Texas, Plaintiff failed to serve the Attorney General of the United States by the initial deadline. *Id.* However, based on Plaintiff's unopposed motion, (D.E. 19), the Court extended Plaintiff's deadline to perfect service to June 28, 2024. (D.E. 22). Plaintiff filed proof of completed service with the Court within the extended deadline. *See* (D.E. 26) (filed on June 18, 2024). Accordingly, Defendant's failure to perfect service argument is moot. (D.E. 14, p. 3–4).

#### B. Federal Tort Claims Act

Defendant alternatively argues that the Court lacks subject matter jurisdiction over Plaintiff's FTCA claim due to the United States' sovereign immunity. (D.E. 14, p. 5). "As the sovereign, the United States is immune from suit unless, and only to the extent that, it has consented to be sued." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (first citing

*F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994); and then citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992)). The FTCA provides such consent by establishing a general waiver of the United States' sovereign immunity for claims regarding "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 2679(b)(1); *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001). The law enforcement proviso of the FTCA includes in this general waiver of sovereign immunity any negligent or wrongful acts or omissions by federal law enforcement officers. 28 U.S.C. § 2680(h).[4] Law enforcement officers are defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of [f]ederal law." *Id.* Certain tortious conduct by such officers is specifically identified, including claims of assault and battery and false imprisonment. *Id.*

However, the FTCA also establishes a customs-duty exception that eliminates liability from claims that come from the "detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." *Id.* § 2680(c). This exception "exempts from the FTCA's waiver of sovereign immunity any claim based on the detention of goods by any federal law enforcement officers in the performance of their lawful duties." *Halverson v. United States*, 972 F.2d 654, 656 (5th Cir. 1992) (per curiam).

To establish whether the law enforcement proviso of § 2680(h) or the customs-duty exception of § 2680(c) applies, the essential inquiry is the conduct that gives rise to the torts. *Jeanmarie*, 242 F.3d at 604. In *Jeanmarie*, the Fifth Circuit held that tort claims permitted by 680(h) "*are barred* by the customs-duty exception if the alleged torts arose from the inspection,

---

[4] This provision is commonly known as the "law enforcement proviso" or the "intentional torts exception." *Millbrook v. United States*, 569 U.S. 50, 52 (2013).

6 / 10

seizure, or detention of goods by a Customs agent." *Id.* Also, even actions "remotely related to a Customs agent's official duties are covered by the exception in § 2680(c)." *Id.* (citing *Capozzoli v. Tracey*, 663 F.2d 654, 658 (5th Cir. 1981)).[5] The scope of the customs-duty exception covers "not only damages occurring in the act of detention itself, but also those flowing from the detention . . . ." *Halverson*, 972 F.2d at 656 (citing *Kosak v. United States*, 465 U.S. 848, 854 (1984)).

Plaintiff argues that (1) the law enforcement proviso applies to the Border Patrol agents in the present case; (2) because the law enforcement proviso applies, the United States waived sovereign immunity; (3) therefore, the Court retains subject matter jurisdiction. (D.E. 19, p. 3–4). In support, Plaintiff cites *Millbrook v. United States*, arguing that because the alleged tortious conduct at issue involved law enforcement officers, § 2680(h) waives sovereign immunity. *Id.* (citing 569 U.S. 50, 57 (2013)).

However, *Millbrook* did not address the interplay between § 2680(h) and § 2680(c). Rather, the issue there was whether the law enforcement proviso in 2680(h) applied generally based on one's *status* as a federal officer, or whether it required the tortious conduct to occur within specific actions representing an *exercise* of a federal officer's law enforcement authority. 569 U.S. at 56. The Supreme Court held that this proviso's extension of the waiver of sovereign immunity does not require the alleged tortious acts to occur during specific law enforcement activities. *Id.* at 57. Thus, the United States may be subject to liability for the intentional torts enumerated in § 2680(h) when the conduct occurs "while the law enforcement officer is 'acting within the scope of his office or employment.'" *Id.* at 57 (citing 28 U.S.C. §§ 2680(h), 1346(b)(1)). However, *Millbrook*

---

[5] This exception applies to any law enforcement officer, not just Customs agents. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 220 (2008) ("Congress' use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind.").

is silent on the applicability of § 2680(h) to the law enforcement activities specifically identified in the customs-duty exception of § 2680(c).

Further, the Fifth Circuit has explicitly directed that the law enforcement proviso in § 2680(h) should not override the customs-duty exception in § 2680(c). *Angulo v. Brown*, 978 F.3d 942, 953 (5th Cir. 2020). The court instructed that "'§§ 2680(c) and 2680(h) must be interpreted in a manner that reconciles them, without doing violence to either.'" *Id.* at 953 (quoting *Gasho v. United States*, 39 F.3d 1420, 1433 (9th Cir. 1994)). Further, any waiver of immunity in § 2680(h) only applies "to tortious conduct not involving the seizure and detention of goods by Customs." *Jeanmarie*, 242 F.3d at 604–05 (internal quotation marks omitted) (quoting *Gasho*, 39 F.3d at 1433–34).

Plaintiff's position urging the extensive breadth of the law enforcement proviso would violate the Fifth Circuit's directive in both *Jeanmarie* and *Angulo* by subsuming all conduct of customs officers in the law enforcement proviso of § 2680(h). *See Jeanmarie*, 242 F.3d at 603–04 (noting that conduct occurring during lawful detention and search by Border Patrol agents falls under the customs-duty exception to the FTCA); *Angulo*, 978 F.3d at 953 (explaining that the waiver of immunity in § 2680(h) applies only under circumstances not involving the seizure and detention of goods by Border Patrol agents). Further, this reading would encompass the inspection, search, and seizure of goods unequivocally identified in the plain language of the FTCA's customs-duty exception. Thus, Plaintiff's interpretation of the scope of § 2680(h) not only contradicts the Fifth Circuit's holding in *Angulo* but would also eviscerate the customs-duty exception.

Further, the factual similarities between the present case and *Angulo* show why § 2680(h) is inapplicable to this case. In *Angulo*, the plaintiff brought an FTCA claim for alleged tortious conduct by Border Patrol agents during a stop at a mandatory checkpoint. 978 F.3d at 946. After the plaintiff in *Angulo* stopped, a primary inspection was initiated, and the plaintiff was told to

8 / 10

move his car to a secondary location for another inspection. *Id.* at 946–47. The plaintiff initially complied, but then stopped his car and tried to confirm with a nearby agent that he would be able to speak with a supervisor. *Id.* While the details of the subsequent interaction were disputed, video evidence demonstrated that the plaintiff was physically removed from his vehicle by agents, restrained in handcuffs, and "brisk[ly]" directed to an integration area. *Id.* at 947. After the plaintiff was searched and questioned, he was released "just over one hour" after initially being stopped at the checkpoint. *Id.* The Fifth Circuit held that because the alleged tortious conduct occurred during the stop, the customs-duty exception applied, and the plaintiff's claims were barred by sovereign immunity. *Id.* at 953.

Here, Plaintiff also stopped at a mandatory border check point, where a primary search led to the instruction to move to a secondary location for an additional search. (D.E. 10, p. 3–4). Plaintiff clearly states that all alleged tortious conduct by agents occurred after he was informed that a search of his vehicle was required, and that he was being detained. *Id.* Further, the alleged assault of Plaintiff, and damages to his first aid kit and containers, all occurred during the search. *Id.* at 5–6. Thus, like in *Angulo*, because the alleged tortious conduct in this case occurred during detention by agents, the customs-duty exception applies.

This accords with the Fifth Circuit's holding that while § 2680(c) should be interpreted "broadly," the application of the customs-duty exception hinges on the alleged conduct's timing. *See Davila v. United States,* 713 F.3d 248, 256 (5th Cir. 2013) (noting that claims arising from conduct by Border Patrol agents during the inspection, seizure, or detention of goods is exempt from FTCA suits). The custom-duty exception only applies if the conduct occurred "during circumstances that would warrant a detention-of-goods exception" under § 2680(c). *Id.* In *Davila,* the Fifth Circuit reversed the district court's dismissal of the plaintiff's FTCA claim under § 2680(c) because the tortious conduct occurred "well after" and was unrelated to the detention

and search of the plaintiff's car at a border checkpoint. *Id.* at 257. Here, in contrast, the allegedly tortious conduct happened during—not after—the detention by federal law enforcement officers. (D.E. 10, p. 3–4). In sum, like *Angulo* and unlike *Davila*, the conduct in the present case occurred during the search of Plaintiff's person and goods under circumstances expressly described in the customs-duty exception, as interpreted by *Jeanmarie*. *Angulo*, 978 F.3d at 953; *Cf. Davila*, 713 F.3d at 256; *Jeanmarie*, 242 F.3d at 604.

Finally, all questions of sovereign immunity should be strictly construed in favor of the sovereign, *Fort Bend Cnty. v. United States Army Corps of Eng'rs*, 59 F.4th 180, 189 (5th Cir. 2023) (citing *Alabama-Coushatta*, 757 F.3d at 488), and any claimed ambiguity concerning the waiver of immunity shall be interpreted in favor of the United States' sovereign immunity, *Lane*, 518 U.S. at 192. It is undisputed that alleged tortious conduct in this case occurred during the seizure and detention of goods by Border Patrol agents. Because the Court must (1) "strictly construe[]" a waiver of sovereign immunity in favor of the sovereign, *Fort Bend Cnty.*, 59 F.4th at 189, and (2) interpret the customs-duty exception broadly, *Davila*, 713 F.3d at 256, the Court holds the customs-duty exception applies, and sovereign immunity bars Defendant from liability.

### IV. Conclusion

In sum, Plaintiff has failed to establish that the alleged tortious conduct is not within the custom-duty exception to the FTCA. Accordingly, the United States has not waived sovereign immunity, and the Court is without subject matter jurisdiction. The Court thus **GRANTS** Defendant's motion to dismiss. (D.E. 14). A final judgment will be entered separately.

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
March 11, 2025